United States Court of Appeals

For the Eighth Circuit

_____

No. 23-2994
_____

Kenneth Ringhofer

*Plaintiff - Appellant*

v.

Mayo Clinic, Ambulance, a Minnesota non-profit corporation

*Defendant - Appellee*

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellant(s)*
_____

No. 23-2995
_____

Anita Miller

*Plaintiff - Appellant*

v.

The Mayo Clinic, a Minnesota non-profit corporation

*Defendant - Appellee*

Appellate Case: 23-2994     Page: 1     Date Filed: 05/24/2024 Entry ID: 5397218

_____

No. 23-2996
_____

Shelly Kiel

*Plaintiff - Appellant*

v.

Mayo Clinic Health System-Southeast Minnesota Region, a Minnesota non-profit corporation

*Defendant - Appellee*

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellant(s)*
_____

No. 23-2997
_____

Sherry Ihde

*Plaintiff - Appellant*

v.

The Mayo Clinic, a Minnesota non-profit corporation

*Defendant - Appellee*

-2-

Appellate Case: 23-2994     Page: 2     Date Filed: 05/24/2024 Entry ID: 5397218

_____

No. 23-2999
_____

Kristin Rubin

*Plaintiff - Appellant*

v.

The Mayo Clinic, a Minnesota non-profit corporation

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 13, 2024
Filed: May 24, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

BENTON, Circuit Judge.

     Alleging failure to accommodate their religious beliefs under Title VII and the Minnesota Human Rights Act, five employees sued The Mayo Clinic, Mayo Clinic Health System–Southeast Minnesota Region, and Mayo Clinic, Ambulance (collectively "Mayo"). They claimed Mayo terminated them for refusing Covid-19 vaccinations or testing. The district court dismissed the claims, ruling that (1) Anita Miller and Sherry Ihde did not exhaust their administrative remedies under Title VII, (2) the other plaintiffs failed to plausibly plead religious beliefs that conflict with Mayo's Covid-19 policies, and (3) the MHRA fails to provide relief for not

-3-

accommodating religious beliefs. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

During the Covid-19 pandemic, Mayo required all employees to receive the vaccine. Any employee exempted from vaccination was required to test weekly. On December 3, 2021, Mayo notified all employees that they must comply with the policy by January 3 or be terminated.

The plaintiffs sought religious accommodations for the vaccination requirement, citing their Christian religious beliefs. Mayo denied the accommodations for Shelly Kiel, Kenneth Ringhofer, and Anita Miller, who refused to get the vaccine. It granted vaccination exemptions to Sherry Ihde and Kristin Rubin, but required them to test for Covid-19 weekly, which they refused.

Plaintiffs sued for failure to accommodate their religious beliefs under Title VII and the MHRA. Kiel, Ringhofer, and Miller alleged that the vaccination requirements conflicted with their Christian beliefs because: (1) according to Scripture, their "body is a temple" they must respect and protect, and (2) their anti-abortion beliefs, rooted in religion, prevent using a product "produced with or tested with fetal cell lines." Ihde and Rubin invoked the "body is a temple" principle in opposing the testing requirement.

The district court dismissed all claims, finding (1) Ihde and Miller did not exhaust their claims because their EEOC charges preceded their terminations, (2) Kiel, Ringhofer, and Rubin did not adequately plead that their religious beliefs conflicted with the vaccination or testing requirements, and (3) the MHRA did not provide a cause of action for failure to accommodate religious beliefs. Plaintiffs appeal.

-4-

II.

The district court dismissed Miller and Ihde's Title VII claims, finding that they had not exhausted their administrative remedies. This court reviews de novo a 12(b)(6) dismissal. **Thompson v. Harrie**, 59 F.4th 923, 926 (8th Cir. 2023).

Under Title VII, a plaintiff must "provide[] the EEOC the first opportunity to investigate discriminatory practices and enable[] it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." **Williams v. Little Rock Mun. Water Works**, 21 F.3d 218, 222 (8th Cir. 1994). Plaintiffs must file a charge with the EEOC within 300 days of the alleged "unlawful employment practice." **42 U.S.C. § 2000e-5(e)(1)**.

Terminations are "discrete" employment practices. **Nat'l R.R. Passenger Corp. v. Morgan**, 536 U.S. 101, 114 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" with its own exhaustion requirement. ***Id.*** However, "plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." **Nichols v. American Nat'l Ins. Co.**, 154 F.3d 875, 887 (8th Cir. 1998), *quoting* **Philipp v. ANR Freight Sys., Inc.**, 61 F.3d 669, 676 (8th Cir. 1995).

The district court ruled that, since Miller and Ihde filed their EEOC charges before their termination dates, they did not exhaust their Title VII remedies for the "discrete act" of termination:

> The Eighth Circuit has explicitly stated that termination is a "discrete act," not a continuing violation. *See Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009) (*citing Morgan*, 536 U.S. at 114) ("A termination is a discrete act, not a continuing violation."). Accordingly, Plaintiffs Ihde and Miller needed to exhaust their administrative remedies based on the alleged unlawful termination before they can bring those claims to Court. Because they did not supplement their

EEOC charges to include this additional discrete act, they did not satisfy the exhaustion requirement.

*Kiel v. Mayo Clinic Health Sys. Southeast Minnesota*, 2023 WL 5000255, at *6 (D. Minn. Aug. 4, 2023).

The district court erred. "While our court has narrowed its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charges, we have not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted." *Wedow v. Kansas City*, 442 F.3d 661, 673 (8th Cir. 2006). "Guided by the principles set forth in *Morgan*, we continue to adhere to a narrow reading of this exhaustion exception, but we decline, on the facts before us, to abandon it *in toto* where the subsequent retaliatory acts were of a like kind to the retaliatory acts alleged in the EEOC charge." *Id.* at 674.

Miller and Ihde's eventual terminations (the unlawful employment practices alleged in their complaints) are reasonably related to their administrative charges (the Covid-19 vaccination policy). While the policy did not explicitly make termination inevitable, guidance accompanying the policy did. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (The discriminatory act "occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to [plaintiff]," not at the time of termination. "That is so even though one of the *effects* of the denial of tenure–the eventual loss of a teaching position–did not occur until later."); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (finding that the discriminatory act occurred when employee's termination became inevitable, not on the date of termination itself). In their complaints, plaintiffs alleged that on December 3, Mayo issued "Final Written Warnings" notifying staff that they must comply with the policy by January 3, "or be terminated." As of December 3, before Miller and Ihde brought EEOC charges, a challenge to the policy itself was "reasonably related" to an eventual termination.

-6-

"[A]n EEOC complaint need not specifically articulate the precise claim." ***Humphries v. Pulaski County Special Sch. Dist.***, 580 F.3d 688, 697 (8th Cir. 2009). The EEOC charge must provide information that would "give the employer notice of the subject matter of the charge and identify generally the basis for a claim." ***Fair v. Norris***, 480 F.3d 865, 866 n.2 (8th Cir. 2007). Once Mayo received Miller and Ihde's EEOC charges, it had notice of an unlawful termination claim.

Believing that the terminations are not reasonably related to the challenged Covid-19 policy, Mayo cites cases with greater differences between the subject matter of the EEOC charge and the eventual Title VII claim. *See, e.g.*, ***id.*** (where the plaintiff alleged race discrimination in the EEOC charge and later sued for sex discrimination); ***Richter v. Advance Auto Parts***, 686 F.3d 847, 854 (8th Cir. 2012) (where plaintiff alleged race and sex discrimination in EEOC charge and later brought state-law retaliation claim). Moreover, the timing between the charges and terminations support the conclusion here. Ihde's employment was terminated less than a month after she filed an EEOC charge challenging the policy—Miller less than a week. *Cf.* ***Henson v. Union Pac. R.R. Co.***, 3 F.4th 1075, 1081–82 (8th Cir. 2021) (constructive discharge claim was not within scope of EEOC charge in part because plaintiff did not assert he was about to be constructively discharged and alleged constructive discharge occurred "nine months" after filing charge); ***Moses v. Dassault Falcon Jet-Wilmington Corp***, 894 F.3d 911, 920 (8th Cir. 2018) (termination that occurred seven months after EEOC charge "played no part in the initial EEOC charge because the right to sue letter preceded the date of termination").

The district court erred in finding that Miller and Ihde did not exhaust their administrative remedies under Title VII.

### III.

Kiel, Ringhofer, and Rubin challenge the district court's holding that they failed to plausibly plead their Title VII failure-to-accommodate claims. The court

-7-

ruled that they "failed to adequately plead that their protected, sincerely held religious belief was the basis for their opposition to the COVID-19 vaccine." *Mayo Clinic*, 2023 WL 5000255, at *14. Dismissing Miller and Ihde's claims for failure to exhaust, the district court did not rule on their Title VII claims. Miller and Ihde contend that they plausibly pled their claims.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." **42 U.S.C. § 2000e–2(a)(1)**. Religious beliefs do not need to be "acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981). "[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

For a Title VII claim based on a failure to accommodate religious beliefs, this circuit has a three-part test:

> To establish a prima facie case of religious discrimination under Title VII, [employees] must show [1] that they have a bona fide religious belief that conflicts with an employment requirement; [2] that they informed [employer] of this belief; and [3] that they were disciplined for failing to comply with the conflicting requirement of employment.

*Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003), *citing* **Ansonia Bd. of Educ. v. Philbrook**, 479 U.S. 60, 65–66 (1986). The district court found that the plaintiffs failed to adequately plead the first and second elements of the *Jones* test.

Kiel, Ringhofer, and Miller were denied vaccination accommodations and fired for not taking the vaccine. Each argues that their Christian religious beliefs prevent them from taking the Covid-19 vaccine. Each plaintiff invokes two principles in arguing that their religious beliefs conflict with the vaccine mandate:

-8-

(1) their "body is a temple," and thus they shall not inject it with impure or unknown substances, and (2) their anti-abortion beliefs, rooted in their religion, prevent them from using a product developed with fetal cell lines.

The district court erred in finding that the plaintiffs failed to adequately connect their refusal of the vaccine with their religious beliefs. At the motion to dismiss stage, "[t]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795–96 (8th Cir. 2021) (citation omitted). "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). At this early stage, when the complaints are read as a whole and the nonmoving party receives the benefit of reasonable inferences, Kiel, Miller, and Ringhofer adequately identify religious views they believe to conflict with taking the Covid-19 vaccine. Each of these three plaintiffs plausibly connect their refusal to receive the vaccine with their religious beliefs:

- Kiel's complaint states that her "religious beliefs prevent her from putting into her body the Covid-19 vaccines … because they were all produced with or tested with cells from aborted human babies. Receiving the vaccine would make her a participant in the abortion that killed the unborn baby."
- Miller's complaint states that her "religious exemption was based on opposition to the use of vaccines produced with or tested by aborted baby cells. Plaintiff Miller believes in the sanctity of life from conception until natural death. She lives her life according to her sincerely held religious beliefs. . . . She is Christian and has determined she cannot, consistent with her conscience, take the Covid-19 vaccine, and to do so would make her complicit in the killing of the unborn babies from whom the cells used in the vaccines came."
- Ringhofer's complaint states that "his body is a Temple to the Holy Spirit and is strongly against abortion. Plaintiff Ringhofer believes the Vaccine Mandate violates his religious beliefs and conscience to take the Covid-19 vaccine because the vaccines were produced with or tested with fetal cell lines.

> Ringhofer … [believes] that 'Using the fetal cells in the development of it, knowing about it, is against my religion.'"

The district court did not "consider the complaint as a whole," instead focusing on specific parts of the complaints to rule the anti-vaccine beliefs "personal" or "medical." *See* **Warmington**, 998 F.3d at 795–96. As EEOC Guidance says, "overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system." **EEOC Compliance Manual** § 12-I(A)(1) (Jan. 15, 2021).

The district court erred by emphasizing that many Christians elect to receive the vaccine. This does not defeat the plaintiffs' beliefs. *See* **Holt v. Hobbs**, 574 U.S. 352, 362 (2015) ("[T]he guarantee of the Free Exercise Clause[] is 'not limited to beliefs which are shared by all of the members of a religious sect.'"), *quoting* ***Thomas v. Review Bd. of Indiana Emp. Sec. Div.***, 450 U.S. 707, 715–16 (1981).

When Kiel, Ringhofer, and Miller's complaints are read as a whole, they plausibly plead religious beliefs that conflict with Mayo's vaccine requirement. These claims are sufficient to survive a motion to dismiss.[1]

Rubin and Ihde received exemptions from the vaccine mandate. As part of Mayo's policy, however, they were required to undergo weekly testing for Covid-19. They did not receive a testing exemption, refused to submit to it, and were fired. They contend they plausibly pled a religious belief that conflicted with Covid-19 testing:

---

[1]The district court found that Kiel and Ringhofer failed to plead that they informed Mayo Clinic of their sincerely held beliefs under the second prong of the *Jones* test. The court erred. Kiel and Ringhofer each submitted religious exemption requests, informing Mayo of the alleged conflict between their beliefs and the Covid-19 policy.

-10-

- Rubin's complaint states: "Now the Holy Spirit dwells in her and she believes her body is a temple for the Holy Spirit that she is duty bound to honor. She does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary. Accordingly, it violates her conscience to take the vaccine or to engage in weekly testing or sign a release of information that gives out her medical information."
- Ihde's complaint states: "My faith is in my Creator who is my Healer (Ex 15:26). Faith is belief combined with action (Jam 2:17). Shifting my faith from my Creator to medicine is the equivalent of committing idolatry-holding medicine in greater esteem then Elohim (Col 3:5). I believe it is legitimate to utilize modern medicine for life-saving purposes; however, there is a fine line between using it and abusing it… Excessive procedures, vanity surgeries, and redundant intrusive testing of healthy, asymptomatic humans is irresponsible and crosses the line violating my conscience before Elohim…"

Rubin and Ihde plausibly pled that their religious beliefs conflict with the testing requirement. As discussed, beliefs do not have to be uniform across all members of a religion or "acceptable, logical, consistent, or comprehensible to others." *Thomas*, 450 U.S. at 714. By connecting their objection to testing to specific religious principles (Rubin's belief that "her body is a temple" and Ihde's belief that testing in this case may be "the equivalent of committing idolatry"), they have satisfied their burden at this stage.

All plaintiffs adequately pled a conflict between their Christian religious beliefs and Mayo Clinic's Covid-19 policy.

IV.

The plaintiffs also sued under the Minnesota Human Rights Act. The MHRA makes it unlawful for an employer to "discharge" or "discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" because of "religion" (among other factors). **Minn. Stat. § 363A.08, subd. 2**. "The same analysis applies to both MHRA and Title VII

-11-

Appellate Case: 23-2994     Page: 11     Date Filed: 05/24/2024 Entry ID: 5397218

claims." ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc), *citing* ***Bahr v. Capella Univ.***, 788 N.W.2d 76, 83 (Minn. 2010).

The district court dismissed these claims, ruling that the MHRA does not have a cause of action for failure to accommodate religious beliefs. Minnesota's federal courts are split on the issue. *Compare* ***Lee v. Seasons Hospice***, 2023 WL 6387794, at *5 (D. Minn. Sept. 29, 2023) (citations omitted) (Minnesota courts "have frequently recognized the 'substantial similarities' between the MHRA and Title VII. . . . Despite the textual difference between Title VII and the MHRA, the Court believes that the Minnesota Supreme Court would find that, like Title VII, the MHRA imposes a duty of religious accommodation."), *with* ***Balow v. Olmsted Med. Ctr.***, 2023 WL 2776028, at *4 (D. Minn. Apr. 4, 2023) (citations omitted) ("[U]nlike Title VII, the MHRA does not impose an affirmative duty on employers to provide religious accommodations to its employees. . . . While both Title VII and the MHRA prohibit religious discrimination in employment, only Title VII explicitly requires employers to provide religious accommodations to employees.").

"If the Minnesota Supreme Court has not spoken on a particular issue, we must attempt to predict how the Minnesota Supreme Court would decide an issue and 'may consider relevant state precedent, analogous decisions, considered dicta ... and any other reliable data.'" ***Integrity Floorcovering, Inc. v. Broan-Nutone, LLC***, 521 F.3d 914, 917 (8th Cir. 2008) (citation omitted). Minnesota precedent supports the *Lee* interpretation, providing a failure-to-accommodate claim under the MHRA. "The MHRA is a remedial act that should be 'construed liberally,' Minn.Stat. § 363A.04, in order to accomplish its purpose of 'secur[ing] for persons in this state, freedom from discrimination,' Minn.Stat. § 363A.02, subd. 1(a)." ***Rasmussen v. Two Harbors Fish Co.***, 832 N.W.2d 790, 795 (Minn. 2013). "Historically, the [Minnesota] Human Rights Act has provided more expansive protections to Minnesotans than federal law." ***Henry v. Indep. Sch. Dist. #625***, 988 N.W.2d 868, 880 (Minn. 2023). *See generally* ***Kenneh v. Homeward Bound, Inc.***, 944 N.W.2d 222, 229 n.2 (Minn. 2020) ("We recognized sexual harassment as a form of sex discrimination 6 years before the United States Supreme Court did so under Title

-12-

VII. . . . We also held that the Human Rights Act provides protection from same-sex discrimination before the Supreme Court recognized similar protections under Title VII. . . . Further, we have held that Minnesota law protects employees from 'equal opportunity harasser[s],' while federal law does not. . . . Minnesota law also provides more extensive remedies.") (internal citations omitted).

Federal law, under Title VII, provides relief for failures to reasonably accommodate religious beliefs. Due to Minnesota's precedent of (1) construing liberally the MHRA, and (2) providing its citizens with commiserate, or greater, protections than under federal law, the Minnesota Supreme Court would decide that the MHRA provides protection against failures to accommodate religious beliefs.

The district court erred by finding that the MHRA does not provide a cause of action for failure to accommodate religious beliefs.

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____